**ANTHONY E. COLOMBO, JR.**
California Bar No. 218411
The Senator Building
105 West F Street, Suite 312
San Diego, California 92101
Telephone: (619) 236-1704
Email: anthonycolombolegal@gmail.com

Attorney for Cristian Gutierrez-Ochoa

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

(**HONORABLE BERYL A. HOWELL**)

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 25cr00035-BAH |
| Plaintiff, | DATE: November 7, 2025<br>TIME: 9:30 a.m. |
| v. | DEFENDANT'S SENTENCING |
| CRISTIAN GUTIERREZ-OCHOA, | <u>MEMORANDUM</u> |
| Defendant. | |

TO:    LERNIK BEGIAN, DOUGLAS SPENCER MEISEL, ASSISTANT UNITED STATES ATTORNEYS.

Defendant, Cristian Gutierrez-Ochoa ("Mr. Gutierrez"), by and through his counsel, Anthony E. Colombo, Jr., and Jan E. Ronis, hereby file the following Sentencing Memorandum.

**I.**

**<u>INTRODUCTION</u>**

Mr. Gutierrez is respectfully requesting the Court impose a sentence of 84 months custody. This request is consistent with the average length of imprisonment imposed for similarly situated defendants over the last five fiscal years. *See* Presentence Investigation Report ("PSR") at 21, para. 111 (citing Judiciary Sentencing Information ("JSIN") statistics for FY2020-2024). Mr. Gutierrez maintains that in examining his particular circumstances and the offense of conviction, the requested sentence of 84 months custody is sufficient, but

not greater than necessary to achieve all the goals of sentencing.

## II.

## SENTENCING FACTORS CONSIDERED

### A.    Current Law

The Sentencing Guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220, 224-25, 259-60 (2005); *United States v. Hantzis*, 625 F.3d 575, 582 (9th Cir. 2010). Accordingly, this Court is authorized to impose a sentence below the Guidelines range. *Booker*, 543 U.S. at 245. The Supreme Court has established a framework for approaching the sentencing process post-*Booker*. *See Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 551 U.S. 1113 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Under this framework, the sentencing court must consider all of the factors listed in 18 U.S.C. § 3553(a) when imposing sentence. *Id*.

The overarching statutory charge under 18 U.S.C. § 3553(a) is to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). Those purposes are the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- to afford adequate deterrence;
- to protect the public from future crimes of the defendant; and
- to provide the defendant with necessary educational or vocational training, medical care, or other correctional treatment.

All sentencing proceedings are to begin by determining the applicable Guidelines range. *Carty*, 520 F.3d at 991. The Guidelines are the starting point and the initial benchmark, and are to be kept in mind throughout the process. *Id*. Furthermore, the parties must be given a chance to argue for a sentence they believe is appropriate. *Id*.

The sentencing court must then consider the factors outlined in 18 U.S.C. § 3553(a) to determine if they support the sentence suggested by the parties, specifically:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guidelines range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);

25cr00035-BAH

- the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

When considering these factors and determining the appropriate sentence, the sentencing court may not presume that the Guidelines range is reasonable, nor should the Guidelines factor be given more or less weight than any other. *Nelson v. United States*, 129 S.Ct. 890, 892 (2009); *Carty*, 520 F.3d at 991.

This court is "empowered to disagree with the Guidelines, when the circumstances in an individual case warrant." *United States v. Mitchell*, 624 F.3d 1023, 1028 (9th Cir. 2010). Although "[n]o judge is *required* to sentence at a variance with a Guideline" . . . "every judge is at liberty to do so." *Id*. at 1030 (citing *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010)). Under these principles, the court is at liberty to tailor a sentence to the individual defendant. *United States v. Chavez*, 611 F.3d 1006 (9th Cir. 2010) (citing *Kimbrough*, 552 U.S. at 101). Given the application and balancing of the factors in 18 U.S.C. § 3553(a), the sentencing process necessarily involves an exercise in judgment, not a mathematical proof. *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008). Indeed, rigid mathematical formulas for reviewing outside-guidelines sentences are barred. *Gall*, 552 U.S. at 47.

Furthermore, one of the goals of sentencing remains rehabilitation. *United States v. Moreland*, 568 F. Supp. 2d 674, 687 (S.D. W. Va. 2008). This goal cannot be served if a defendant has nothing to look forward to beyond imprisonment. *Id*. Accordingly, a judge should hesitate to impose a sentence so severe that she "destroys all hope and takes away the possibility of useful life." *Id*. (citing *United States v. Carvajal*, 2005 WL 476125 at *6, 2005 (S.D.N.Y. 2005)). Instead, the district court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a). As the Supreme Court explained in *Pepper*, "the punishment should fit the offender and not merely the crime including taking into account a person's life[,] characteristics and rehabilitation." *See Pepper v. United States*, 562 U.S. 476, 487-88 (2011).

**B.** <u>**Applicable Sentencing Guidelines**</u>

Consistent with both the Government's and the Probation Office's Sentencing Guideline calculations, Mr. Gutierrez maintains the following Sentencing Guidelines are applicable and appropriately applied in this case:

| | |
|---|---|
| Base Offense Level [§ 2S1.1/§ 2B1.1 ] | 8 |
| Value of Laundered Funds > $3.5 million [§ 2B1.1(b)(1)(J)] | +18 |
| Laundered Funds - Drug Trafficking [§ 2S1.1(b)(1)(A) and (B)(i)] | +6 |
| 18 U.S.C. § 1956 Conviction [§ 2S1.1(b)(2)(B)] | +2 |
| Sophisticated Laundering [§ 2S1.1(b)(3)] | +2 |
| Acceptance of Responsibility [§ 3E1.1(a)] | -3 |
| Total Adjusted Offense Level | 33 |

The Sentencing Guideline range for an adjusted offense level of 33, and a Criminal History Category I, is 135-168 months custody.

It is important to note that the Probation Office recommended a downward departure based upon *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994). *See* PSR at 20-21, paras. 108-110. In *Smith*, the D.C. Circuit Court "allowed [a] downward departure because of a defendant's status as a deportable alien, recognizing that because such aliens were ineligible for spending the last 10% of their sentences in community-based confinement and could not be assigned to minimum security prisons ... a defendant's deportable alien status would 'substantial[ly] ... affect the severity of his confinement.'" *See United States v. Brodie*, 524 F.3d 259, 272 (D.C. Cir. 2008) (citing *United States v. Graham*, 83 F.3d 1466, 1481 (D.C. Cir. 1996) (quoting *Smith*, 27 F.3d at 655)). The Probation Office's downward departure pursuant to *Smith* is the equivalent of minus one level off (Offense Level 33 to 32) in the sentencing guidelines (12 month recommended downward departure). Mr. Gutierrez joins in this request but does not do so in the form of a downward departure as he is prohibited from doing so pursuant to the Plea Agreement, rather Mr. Gutierrez requests a *Smith* reduction as a variance pursuant to § 3553(a). *See United States v. Thomas*, 999 F.3d 723,

741 n. 6 (a *Smith* variance can be requested where a *Smith* downward departure might be prohibited by a plea agreement).

### C.    Applicable Factors Pursuant to 18 U.S.C. § 3553(a)

"The Probation Office has identified [] [that] a variance from the applicable guideline range based on the factors outlined in 18 U.S.C. § 3553(a)." *See* PSR at 20, para. 107. In Probation's opinion the increased total offense level by 18 levels, "may overrepresent the seriousness of the offense." *See id*. Mr. Gutierrez agrees. While Mr. Gutierrez maintains the upward adjustment is appropriate as stipulated in the Plea Agreement, the Court is free to consider a variance as suggested by the Probation Office.

As addressed above, the Probation Office also noted, citing *Smith*, that a downward departure may be warranted as "defendant's status as an alien precludes hi[m] from eligibility for participation in certain programs, or from other considerations as an inmate in the US Bureau of Prisons while serving the sentence for the instant offense." *See* PSR at 20-21, paras. 108-110. Mr. Gutierrez agrees. However, Mr. Gutierrez maintains the same consideration that may justify a downward departure may also justify an equal downward variance. *See Thomas*, 999 F.3d at 741 n. 6, and 7. Therefore, Mr. Gutierrez maintains given his status as a deportable alien a downward variance from the otherwise applicable sentencing guideline is appropriate.

The Probation Office recommended a sentence of 123 months custody be imposed, and while Mr. Gutierrez maintains a variant sentence below the applicable sentencing guideline is appropriate in this case, Mr. Gutierrez respectfully requests that the Court impose a sentence of 84 months custody for the reasons articulated below. *See* PSR Sentencing Recommendation at 1 (123 month recommendation) ; *see also* PSR at 21, para. 111 (84 month JSIN average sentence for similarly situated defendants).

### 1.    Nature and Circumstances of the Offense

"[D]ue process requires that a defendant be sentenced on the basis of accurate information. Thus, a district court may consider any relevant information, 'provided that

information has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Brewster*, 116 F.4th 1051, 1060 (9th Cir. 2024) (citing *United States Alvarado-Martinez*, 556 F.3d 732, 734-35 (9th Cir. 2009) (citation omitted) (quoting U.S.S.G. § 6A1.3(a))).  The Plea Agreement and PSR (excluding the information subject to defense objection) provide sufficient information for the Court to consider when evaluating the nature and circumstances of the offense.

It is important to note that Mr. Gutierrez resolved the case early on without litigation and agreed to forfeiture as requested by the Government without opposition.  "[I]t is not forbidden to extend a proper degree of leniency in return for guilty pleas." *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (citing *Corbitt v. New Jersey*, 439 U.S. 212, 223 (1978)).  "[I]t is [] lawful for a court to give a downward variance to a more cooperative defendant while denying the variance to a more litigious defendant." *See id*.  Mr. Gutierrez was not at all litigious.  He accepted responsibility completely and early on.  He would request the Court consider this when determining an appropriate sentence.

### 2.  History and Characteristics of the Defendant

Pursuant to 18 U.S.C. § 3553(a), this Court should consider Mr. Gutierrez's personal history when determining the appropriate sentence for his offense.  There are aspects of Mr. Gutierrez's history and characteristics the Court should focus on that are mitigating.

Mr. Gutierrez is a 28-year-old young man whose life story reflects hardship, misguided loyalty, and ultimately, the capacity for redemption. Born in Zamora, Michoacán, Mexico, Mr. Gutierrez's early years were shaped by instability, limited opportunity, and the absence of meaningful guidance.  He left school as a teenager to work and support his family after his father's incarceration — an event that both traumatized him and normalized, at an impressionable age, the idea that survival sometimes required bending the rules.  Mr. Gutierrez attended school at the Instituto Educativo Tunala but did not complete his education as he began working full-time at a young age.  His family lived in modest means as his father was in custody, and Mr. Gutierrez became the primary financial provider during

his teenage years.  Without positive mentors or stable employment prospects, he was drawn into a network that offered quick income and a sense of belonging he had never experienced. This is not an excuse, but it is an explanation rooted in social and economic reality — one recognized as bearing directly on the type of sentence to imposed.

Before this offense, Mr. Gutierrez had no prior criminal convictions.  He suffers no substance abuse issues.  The instant offense — a non-violent financial offense arising from his association with others — is his first and only criminal conduct.

During nearly a year in custody, Mr. Gutierrez has used his time productively.  At the time of the probation interview Mr. Gutierrez had completed 158 hours of educational programming — including courses in cognitive skills, criminal thinking, communication, job-seeking, and GED preparation.  That number currently stands at 179 learning hours and 126 courses completed and certificates earned.  *See* attached Exhibit A - Completed Educational Course Transcript.[1]  He has undeniably shown initiative, discipline, and a willingness to change.  He has not had any disciplinary issues or behavioral infractions throughout his pretrial detention.  This record demonstrates not only compliance with authority, but active self-improvement.  Mr. Gutierrez's rehabilitation is not performative. It reflects a young man who now fully understands the magnitude of his mistakes and who seeks to rebuild his life with integrity. Courts routinely recognize that extraordinary post-offense rehabilitation can warrant a downward variance.

Mr. Gutierrez is not a U.S. citizen and faces deportation following the completion of the sentence imposed by the Court.  The collateral consequences of removal — including permanent separation from his partner and the absence of reentry programs available to non-U.S. citizens — represent a form of punishment that will far exceed the custodial term. Courts have consistently considered deportation as a mitigating factor supporting a variance.

---

[1]  Mr. Gutierrez has received an individual certificate of achievement for each course completed but to avoid inundating the Court with unnecessary paperwork, Mr. Gutierrez only submits the transcript here which reflects the totality of courses completed.

Mr. Gutierrez today is not the same young man who was arrested last year. He is a young man who has had time to reflect, to study, and to change. He accepted responsibility at an early stage of the case without litigation, and agreed to a forfeiture of everything requested to be forfeited by the Government. He has expressed genuine remorse to the Probation Office and takes full responsibility for his actions. *See* PSR at 9, para. 38. ("The defendant has clearly demonstrated acceptance of responsibility for the offense."). "[H]e regrets putting himself in this situation." *Id*. at 13, para. 65. He has no desire to return to the circumstances or individuals that led him astray. He wants to work, to contribute, and to live a law-abiding life.

His path forward is clear: removal from negative influences, restoration through honest work, and a commitment to a lawful, family-centered future. The § 3553(a) factors — particularly the need to impose a sentence "sufficient, but not greater than necessary" — support a downward variance that recognizes his youth, first-offender status, rehabilitative progress, and the harsh collateral impact of deportation.

### 3. <u>Need to Provide Just Punishment and Respect for the Law</u>

### a. <u>Incarceration - Greater Significance for First-time Offenders</u>

Prior to his incarceration associated with the instant case, Mr. Gutierrez had never been incarcerated. Given Mr. Gutierrez's prior inexperience with the criminal justice system, a lesser period of imprisonment is required to deter him from future criminality. *See United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to reoffend); *see also United States v. Baker*, 445 F.3d 987, 990 (7th Cir. 2006) (first experience with prison would mean more to defendant and have greater impact than to a defendant who had prior convictions).

25cr00035-BAH

### b. <u>The Significant Collateral Consequence of Conviction</u>

#### i. <u>Deportation</u>

Mr. Gutierrez is not a United States citizen.  As a result of Mr. Gutierrez's undocumented status he will be deported back to Mexico upon the completion of any sentence imposed by the Court.  Regardless of the sentence imposed, his conviction renders him ineligible for relief from removal or deportation.  Thus, Mr. Gutierrez will be exiled from the United States at the conclusion of this case.  The loss of his right to live in, or even visit, the United States is a life-long collateral consequence of Mr. Gutierrez's status.  The deportation he faces is a "life sentence of banishment [from the United States] in addition to the punishment which a citizen would suffer from identical acts." *Jordan v. De George*, 341 U.S. 223, 232 (1951) (Jackson, J. dissenting).  If Mr. Gutierrez were a citizen, any sentence that this Court imposes will have a definite beginning and end.  However, long after his sentence is completed Mr. Gutierrez will suffer the consequences of his conviction in this case.  The collateral consequence of life-time banishment from the United States is a drastic penalty in addition to any custodial sanction, one which will continue to impact not only Mr. Gutierrez's life, but the lives of all of his family members as well.

Complicating Mr. Gutierrez's inevitable deportation to Mexico is the credible fear he has about being deported back to Mexico.  When Mr. Gutierrez was 11 years old his father was arrested by Mexican authorities.  *See* PSR at 11, para. 55.  Mr. Gutierrez was detained and beaten by the Mexican authorities.  *See* PSR at 13, para. 66.  The Mexican authorities tortured Mr. Gutierrez with an electric shock device.  After his father's release from custody, in 2018, his father was murdered by members of the Mexican Secretariat of the Navy ("SEMAR").  *See* PSR at 11, para. 53 (paraphrased by the Probation Office as "gun violence").  Mr. Gutierrez's older brother who was last seen in the custody of SEMAR, disappeared a week after their father's murder.  *See* PSR at 11. paras. 54, and 55.  Mr. Gutierrez's older brother who was "a fatherly figure for him" is presumed to have also been murdered by SEMAR.  *See id*. at para. 55.  Mr. Gutierrez suffers sadness, depression, and fear as a result of the death of his father and the presumed death and disappearance of his

25cr00035-BAH

older brother.  *See* PSR at 55.  The "fear" is directly derived from being deported and removed back to Mexico and subjected to the same fate as his father and older brother.

### ii. No Early Release Benefits from the Bureau of Prisons

Furthermore, as a result of Mr. Gutierrez's non-citizen status he faces more severe prison conditions than a United States citizen.  "As a deportable alien, [Mr. Gutierrez] is not eligible for 'the benefits of 18 U.S.C. § 3624(c), which directs the Bureau of Prisons, to the extent practicable, to assure that prisoners spend part of ... their sentences ... under conditions – possibly including home confinement – that will afford the prisoner a reasonable opportunity to adjust and prepare for his re-entry into the community.'" *Thomas*, 999 F.3d at 733 (citing *Smith*, 27 F.3d at 651).  As noted above, a variance may be appropriate to recognize this disparate treatment between non-U.S.-citizens and U.S.-citizens which makes any custodial sentence more severe for a non-citizen of the United States.  Simply put, and as recognized in *Smith* and its progeny, as a non-citizen any prison term this Court imposes will be more severe because Mr. Gutierrez is ineligible for home detention, community confinement, work release, intermittent incarceration, or minimum security designation.  *See also in accord with Smith - United States v. Davoudi*, 172 F.3d 1130 (9th Cir. 1999) (District Court recognized discretion to depart downward due to disparity of sentences between citizen and non-citizen); *United States v. Charry-Cubillos*, 91 F.3d 1342, 1344 (9th Cir. 1996) (same); *United States v. Farouil*, 124 F.3d 838 (7th Cir. 1997) (defendant's status as a deportable alien renders him subject to unusual or exceptional hardship in his conditions of confinement due to his ineligibility for early release); *United States v. Bakeas*, 987 F.Supp. 44 (D. Mass. 1997) (departure from 12 months custody to probationary sentence because defendant was ineligible for minimum security confinement).

### c. The Requested Sentence is Appropriate to Avoid an Unwarranted Sentencing Disparity

When considering Mr. Gutierrez's request for an 84 month custodial sentence the Court should consider a district court's sentence must be determined in light of the factors set forth in 18 U.S.C. § 3553(a) which specifically include the "need to avoid unwarranted

sentencing disparities." *See* 18 U.S.C. 3553(a)(6) (2024); *see also* 28 U.S.C. Section 991(b)(1)(B); U.S.S.G. Ch.1, Pt.A, ("Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."). Here, Mr. Gutierrez was not charged with any co-defendants. Logically, then only a nationwide comparison can be conducted in conducting a 3553(a)(6) analysis. As a result, Mr. Gutierrez suggests in analyzing the need to avoid unwarranted sentencing disparities the Court should consider the JSIN statistics of similarly situated defendants. This suggested analysis is consistent with the intent and application of the Sentencing Guidelines. "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." *See* U.S.S.G. Ch. 1 Pt. A 3. The Basic Approach (Policy Statement). The "[Sentencing] Commission developed these guidelines as a practical effort toward achievement of a more honest, uniform, equitable, proportional, and therefore effective sentencing system." *See id.* "[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *United States v. Otunye*, 63 F.4th 948, 960 (D.C. Cir. 2023) (citing *Gall v. United States*, 552 U.S. 38, 54 (2007)). Therefore, the JSIN statistics represent a reasonable a group of similarly situated defendants to conduct a disparity analysis consistent with the requirement of § 3553(a)(6).

According to the available Judiciary Sentencing Information, "During the last five fiscal years (FY2020-2024), there were 96 defendants whose primary guideline was § 2S1.1, with a Final Offense Level of 33 and a Criminal History Category of I, after excluding defendants who received a § 5K1.1 substantial assistance departure. For the 95 defendants (99%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 84 month(s) and the median length of imprisonment imposed was 84 month(s)." *See* PSR at 21, para. 111.

Therefore, given the JSIN statistics, Mr. Gutierrez requests the Court impose a custodial sentence of 84 months consistent with the average sentence imposed on similarly

situated defendants throughout the nation. An 84 month custodial sentence is appropriate to avoid unwarranted sentencing disparities.

### 4.  The Proposed Sentence will Promote Deterrence

#### a.  Specific Deterrence is Achieved with an 84 Month Sentence

Here, an 84 month sentence is sufficient to specifically deter Mr. Gutirrez from engaging in any future criminal conduct. The time already incarcerated, the additional incarceration to be served, and the threat of further incarceration if Mr. Gutierrez does not comply with his conditions of supervised release are all deterrence enough. Mr. Gutierrez is 28 years old, and thus, if the Court were to impose the sentence requested he will spend the rest of his 20s in custody and be approximately 35 years old at the time of his release from custody. Further incarceration beyond 84 months is not necessary to promote specific deterrence, or general deterrence.

#### b.  General Deterrence and Individualizing the Sentence

Few legal principles are either as ancient or deeply etched in the public mind as the notion that punishment should fit the crime. *See United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The familiar maxim, however, is only half-true. "[I]n the present century the pendulum has been swinging away from ... the philosophy that the punishment should fit the crime and toward on that the punishment should [also] fit the criminal." W. LaFave & A. Scott, Handbook on Criminal Law § 5 at 25 (1972). The concept of the notion of individualized sentencing is firmly entrenched in our present jurisprudence. As the Supreme Court observed, "[p]unishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). While general deterrence is a legitimate consideration in passing sentence and must be considered by the Court under 3553(a), it is subject to limitation. "Tailoring punishment to the individual criminal may reduce the efficacy of [general] deterrence, but that reduction is an inevitable cost of a system that eschews mechanistic punishment." *Barker*, 771 F.2d at 1368. As the Supreme Court explained in *Pepper*, "the punishment should fit the offender and not merely the crime including taking into account a person's life [,] characteristics and rehabilitation." *See*

*Pepper v. United States*, 562 U.S. 476, 487-88 (2011). "[G]eneral deterrence for the benefit of society is served when a person is convicted of a serious crime, thus deterring others from making the same mistake." *United States v. Onuoha*, 820 F.3d 1049, 1057 (9th Cir. 2016).

"[T]here is little doubt about the direction of society's evolution: For most of the 20th Century, American sentencing practices emphasized rehabilitation of the offender and the availability of parole. But by the 1980s, outcry against repeat offenders, broad disaffection with the rehabilitative model, and other factors led many legislatures to reduce or eliminate the possibility of parole, imposing longer sentences in order to punish criminals and prevent them from committing more crimes." *Miller v. Alabama*, 567 U.S. 460, 497 (2012) (Roberts, Chief, J., dissenting). The Court, however, must consider individualizing the sentence to Mr. Gutierrez.

In the instant case when weighing the need to impose a just sentence to promote general deterrence against the need to individualize the sentence, Mr. Gutierrez maintains general deterrence is satisfied with an 84 month custodial sentence. The recommended sentence is the appropriate individualized sentence. A judge should hesitate to impose a sentence so severe that he "destroys all hope and takes away the possibility of useful life." *United States v. Carvajal*, 2005 WL 476125 at *6, 2005 (S.D. N.Y. 2005)). The 84 month custodial sentence is severe, but does not take away all possibility of a useful life.

### 5.  The Proposed Sentence is Sufficient to Protect the Public

Relevant to the sentence, the Court is required to impose a sentence that best protects the public. Mr. Gutierrez is a first-time felony offender. As a first-time felony offender, Mr. Gutierrez presents a low risk of recidivism. *See United States v. Duane*, 533 F.3d 441, 453 (6th Cir. 2008). Recidivism rates of first-offenders are significantly lower than those for other defendants in higher criminal history categories. *See* Michael Edmund O'Neill, *Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time Offenders in the Federal System*, 42 B.C.L. Rev. 291 (2001) (suggesting a different Criminal History Category be created for "true first-time offenders").

Importantly, when considering the need to protect the public, the Court should consider Mr. Gutierrez's conduct while in pretrial confinement.  As noted above, Mr. Gutierrez has spent 179 hours engaged in rehabilitative study and course work, and he has completed 126 rehabilitative educational courses.  *See* Exhibit A.  He has spent his time in a sincere effort to improve and rehabilitate himself.  This should be taken into account by the Court when considering recidivism and the need to protect the public in the future.  Mr. Gutierrez on his own has realized that education and employment are tools that can be utilized for a brighter future, but impressively he has also acted upon this belief in earnest. Education and employment, rather than severe incarceration are more effective ways to protect the public and prevent recidivism when the Court weighs the need for punishment versus the need for rehabilitation.  Here, it is simply not necessary to impose a more severe sentence than requested to protect the public.

### III.

### SENTENCING RECOMMENDATION

Based on the foregoing facts and law, Mr. Gutierrez respectfully requests this Court impose an 84 month sentence.

Respectfully Submitted,

*/s/ Anthony E. Colombo, Jr.*

DATED: October 24, 2025          **ANTHONY E. COLOMBO, JR.**

Attorney for Mr. Gutierrez-Ochoa