IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

CRISTIAN FERNANDO GUTIERREZ-
OCHOA,

    *Defendant*.

No. 1:25-CR-035 (BAH)

---

## AMERICAN VICTIMS' RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ..................................................................................................................... 2

I.    THE GOVERNMENT'S STIPULATION CONFIRMS AMERICAN VICTIMS
      HAVE CONSTITUTIONAL AND STATUTORY STANDING. ................................. 2

      A.    THE GOVERNMENT DOES NOT CHALLENGE AMERICAN VICTIMS'
            CONSTITUTIONAL STANDING. .................................................................. 2

      B.    AMERICAN VICTIMS HAVE STATUTORY STANDING ........................... 5

            1.    THE GOVERNMENT HAS STIPULATED THAT THE CJNG IS
                  AN AGENCY OR INSTRUMENTALITY OF THE JUÁREZ
                  CARTEL. .......................................................................................... 6

            2.    TITLE HAS NOT VESTED IN THE GOVERNMENT. ...................... 8

            3.    IT IS A VIOLATION OF DUE PROCESS TO HOLD ANY ASPECT
                  OF THE POF AGAINST AMERICAN VICTIMS. ............................ 10

            4.    SOVEREIGN IMMUNITY IS A RED HERRING. ............................ 10

                  a.    The Supreme Court and D.C. Circuit moot the government's
                        possession argument. ................................................................11

                  b.    The government no longer challenges other American victims
                        of terrorism's attachment of blocked assets in the
                        government's possession, custody, or control............................ 13

            5.    THE GOVERNMENT'S ALLEGED LICENSE DOES NOT
                  SUBVERT TRIA .............................................................................. 14

II.   THE BLOCKED ASSETS IN THIS CASE ARE "BLOCKED BY OPERATION OF
      LAW." ............................................................................................................... 15

III.  GOVERNMENT'S IMPROPER REFERENCE TO OFAC REQUESTS THE
      COURT ABDICATE ITS ARTICLE III OBLIGATIONS. ................................... 19

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971)... 10

*Cisneros v. Alpine Ridge Group*,
 508 U.S. 10 (1993)........................................................................................................... 5

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 US 42 (2024) .........................10, 11, 12

*Est. of Levin v. Wells Fargo Bank, N.A.,* 156 F.4th 632 (D.C. Cir. 2025) .............................. passim

*Estate of Jeremy Isadore Levin, et al. v. Wells Fargo Bank, N.A.,* Case No. 21-cv-0420 (JEB)
 (D.D.C.) ...................................................................................................................... 13

*Estate of Levin v. Wells Fargo Bank, N.A.,* 45 F.4th 416 (D.C. Cir. 2002). ................................ 17

*Financial Oversight and Mgmt. Bd. for P.R. v. Centro Periodismo Investigativo, Inc.,* 598 U.S.
 339 (2023)....................................................................................................................11

*Hausler v. JP Morgan Chase Bank, N.A.,* 740 F.Supp.2d 525 (S.D.N.Y. 2010)........................... 13

*Hill v. Republic of Iraq*,
 2003 WL 21057173 (D.C. Cir. Mar. 11, 2003) ........................................................... 5

*Howard J. Miller, et al. v. Juárez Cartel,* 2022 WL 2286952, (D.N.D. June 24, 2022) ................ 1

*INS v. Chadha*,
 462 U.S. 919 (1983)...................................................................................................... 20

*Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024)..................................................... 17

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992).................................................................... 3

*M'Culloch v. State*,
 17 U.S. 316 (1819)........................................................................................................ 20

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*,
 556 U.S. 366 ................................................................................................................... 6

*Morrison v. Federal Bureau of Prisons,* 2023 WL 172202 (D.D.C. Jan. 12, 2023)...................... 2

*Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322 (1979). ......................................................... 10

*Stansell v. Revolutionary Armed Forces of Colombia*, 2019 WL 4040680 (D.D.C. Aug. 26,
 2019). ........................................................................................................................... 6

*Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83 (1998); ........................................................ 5

*U.S. Term Limits, Inc. v. Thornton*,
 514 U.S. 779 (1995)...................................................................................................... 20

*U.S. v. Daugerdas*,
 892 F.3d 545 (2d 2018) ................................................................................................. 9

*U.S. v. Emor*, 785 F.3d 671 (D.C. Cir. 2015) .......................................................................... 3, 5

*U.S. v. Frank,* 8 F.4th 320 (4th Cir. 2021)..................................................................................... 5

*U.S. v. McHan,* 345 F.3d 262 (4th Cir. 2003)...............................................................11

*United States v. All Funds on Deposit with R'J O'Brien & Associates,* 783 F.3d 607 (7th Cir. 2015) ................................................................................................................. 3, 4, 5

*United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233,* 326 F.3d 36 (1st Cir. 2003)........................................ 3

*United States v. Parcel of Land, Bldgs., Appurtenances & Improvements, Known as 92 Buena Vista Ave., Rumson, N.J.,* 507 U.S. 111 (1993) ........................................................................................................ 8

*United States v. Reckmeyer,* 836 F.2d 200 (4th Cir. 1987) ........................................................ 10

*Weinstein v. Islamic Republic of Iran,* 274 F.Supp.2d 53 (D.D.C. 2003) .................................... 13

*Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579 (1952)........................................................................................................ 20

**Statutes**

18 U.S.C. § 981 ........................................................................................................ 12

21 U.S.C. § 853 ...................................................................................................10, 11

Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610, note, § 201 ................................ passim

**Other Authorities**

1 J. Story, Commentaries on the Constitution of the United States 383-84 (1858)...................... 20

148 Cong. Rec. S11524-01 ........................................................................................ passim

A. Lincoln, Gettysburg Address (1863) ............................................................................ 20

Black's Law Dictionary (12th Ed. 2024) ........................................................................... 8

U.S. Dep't of Just., Off. of the Insp. Gen., *Audit of the Assets Forfeiture Fund and Seized Asset Deposit Fund Ann. Financial Statements Fiscal Year 2023* (Jan. 2024)................................11

U.S. Dep't of Justice, "Assets Forfeiture Fund and Seized Asset Deposit Fund Management's Discussion and Analysis (Unaudited)," Sept. 30, 2024 ................................................... 8

U.S. Dep't of the Treasury, Office of Foreign Assets Control, *Program Tag Definitions for OFAC Sanctions Lists,* available at https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/program-tag-definitions-for-ofac-sanctions-lists ............................................................... 7

U.S. Dep't. of Just., *Asset Forfeiture Policy Manual 2025* .............................................8, 11

U.S. Dep't of the Treasury, Office of Foreign Assets Control, *Basic Information on OFAC and Sanction* at #9, available at https://ofac.treasury.gov/faqs/topic/1501................................... 16

United States Department of Justice, Justice Manuel, Title 9, Section 27.110, comment........... 16

**Regulations**

28 C.F.R. § 8.5 ........................................................................................................ 12

31 C.F.R. § 598.312 .................................................................................................. 17

Exec. Order No. 14059, 86 Fed. Reg. 71549 (Dec. 15, 2021)....................................................... 16

American Victims of Cartel Terrorism ("American Victims"), by and through undersigned counsel, submit this Response in Opposition to the Government's Motion to Dismiss American Victims' Ancillary Petition.

American Victims submit that the following fundamental question animates this case:

If the Terrorism Risk Insurance Act of 2002 ("TRIA") does not permit American Victims—who on November 4, 2019, collected, cleaned, prepared, and buried the bones and ashes of their murdered mothers, sisters, daughters, sons, and wives[1]— to obtain "some measure of justice and compensation"[2] from the blocked assets of the Juárez Cartel and/or its agencies or instrumentalities "notwithstanding any other provision of law" (including laws pertaining to criminal forfeitures), then did Congress enact a statute that is "mere surplusage"?

Congress answered this question in 2002 (and again when it expanded TRIA to incorporate assets seized pursuant to the Narcotics Kingpin Act) by legislating an end to the Executive Branch's shielding of terrorist assets from American victims.[3] The government's interpretation of TRIA in this litigation would nullify TRIA and resurrect the pre-2002 "misguided policy" which Congress explicitly "abandoned."[4]

The government has stipulated that Cártel de Jalisco Nueva Generación ("CJNG") is an agency or instrumentality of the Juárez Cartel and the assets at issue in this case (hereinafter referred to as the "Blocked Assets") are "blocked by operation of law."[5]

As the D.C. Circuit recently held, TRIA's "notwithstanding" clause "prevails"[6] over any other provision of law the government may invoke to deny American Victims "justice and

---

[1] *Howard J. Miller, et al. v. Juárez Cartel,* 2022 WL 2286952, at *42 (D.N.D. June 24, 2022).

[2] 148 Cong. Rec. S11524-01 (Statement of Sen. Harkin) (hereinafter "Harkin Statement");

[3] *See* Harkin Statement; *Est. of Levin v. Wells Fargo Bank, N.A.,* 156 F.4th 632, 639 (D.C. Cir. 2025) (hereinafter "*Levin II*").

[4] Harkin Statement.

[5] ECF No. 64 at p. 16.

[6] *Levin II* at 643 n. 1.

compensation."[7] As such, American Victims respectfully request that the Court deny the government's motion to dismiss.

## ARGUMENT

### I.    THE GOVERNMENT'S STIPULATION CONFIRMS AMERICAN VICTIMS HAVE CONSTITUTIONAL AND STATUTORY STANDING.

The government has "stipulated that CJNG supplied narcotics to the Juárez Cartel—in other words, they had a business relationship akin to one between wholesale and retail sellers of merchandise." It has further agreed that for purposes of this motion, it "does not dispute [American Victims'] assertion that the Pamplona Property or seized cash **are blocked assets.**"[8] These **stipulated facts** are sufficient to establish American Victims' constitutional and statutory standing.

#### A.    The Government does not challenge American Victims' Constitutional Standing.

To defeat the government's Rule 12(b)(1) motion, American Victims bear "the burden of proving a court's subject-matter jurisdiction over the claim at issue. When considering such a motion, a court must accept as true all uncontroverted material factual allegations contained in the [Ancillary Petition] and construe the [Ancillary Petition] liberally, granting [American Victims] the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions."[9]

---

[7] Harkin Statement.
[8] ECF 64 at p. 16 (emphasis added). As discussed further below, assets a-d and f-l in the preliminary order of forfeiture ("POF"), ECF No. 40, are all TRIA blocked assets.
[9] *Morrison v. Federal Bureau of Prisons,* 2023 WL 172202, at *3 (D.D.C. Jan. 12, 2023) (internal citations and quotations omitted).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we [the Supreme Court] presume that general allegations embrace those specific facts that are necessary to support the claim."[10]

The government ***does not challenge*** American Victims' constitutional standing. The government's brief—in the "Applicable Law" section ***not*** the "Argument" section[11]—states that American Victims "must have standing under Article III of the Constitution ('constitutional standing') as well as standing under 21 U.S.C. § 853 ('statutory standing')."[12] While a truism, it is not a challenge to American Victims' constitutional standing.

This lack of challenge to American Victims' constitutional standing makes sense as they "need only establish a colorable claim" that their rights have been infringed.[13] As the Seventh Circuit previously held:

> [American Victims] allege an immediate and actual threat of injury that is far from frivolous—the impending forfeiture of seized terrorist funds to which they have an arguable claim. TRIA, the source of [American Victims'] claim, provides in pertinent part:
>
> > Notwithstanding any other provision of law ... in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune ... the blocked assets of that terrorist party (including the

---

[10] *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (internal citations and quotations omitted); *see also U.S. v. Emor,* 785 F.3d 671, 676 (D.C. Cir. 2015) (emphasis added) (quoting *United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233,* 326 F.3d 36, 41 (1st Cir. 2003) ("The requirements for [American Victims] to demonstrate constitutional standing to challenge a forfeiture are ***very forgiving***.")).

[11] Moreover, the phrase "constitutional standing" as defined by the government appears only five (5) times in the government's brief—all references appear within the same paragraph, all pertain to legal pleading standards, and none pertaining to a challenge to American Victims' constitutional standing.

[12] ECF No. 64 at p. 9.

[13] *United States v. All Funds on Deposit with R'J O'Brien & Associates,* 783 F.3d 607, 616 (7th Cir. 2015) ("*All Funds*"); *Emor*, 785 F.3d at 676 (internal citation and quotations omitted) ("In general, any colorable claim on the property suffices, if the claim of injury is redressable, at least in part, by a return of the property.").

blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.[14]

American Victims fall within this ambit, and the government does not challenge the following material and dispositive facts:

- American Victims are victims of terrorism who hold an unsatisfied judgment against the Juárez Cartel, a terrorist party.

- American Victims' judgment flows from the Juárez Cartel's terrorist massacre of three mothers and six children, all American citizens, on November 4, 2019.

- The Juárez Cartel and the CJNG have a business relationship.

- The criminal defendant was a member of the CJNG connected to the cartel's top leadership.

- The criminal defendant "possessed approximately $2.2 million of CJNG's drug proceeds in bulk U.S. currency at the Pamplona Property, in addition to multiple other items of value purchased with CJNG's drug proceeds, included jewelry, watches, and vehicles named in the preliminary order of forfeiture."[15]

- The "Pamplona Property [and] seized cash are blocked assets."[16]

Together, these facts provide a colorable claim to the blocked assets at issue here.[17] Moving from the threat of injury "to traceability and availability for redress (standing factors two and three), these [Blocked Assets] would redress [American Victims'] multibillion-dollar losses sustained" as a result of the November 4, 2019, massacre.[18] The deprivation of access, and thus harm to the American Victims, to these blocked assets is directly "traceable to the United States' conduct," and "a favorable federal court decision would afford [American Victims] the long

---

[14] *All Funds*, 783 F.3d at 616 (internal citation omitted).
[15] ECF No. 64.
[16] *Id.*
[17] *See All Funds*, 783 F.3d at 617.
[18] *Id.*

awaited opportunity to commence satisfaction" of their judgment.[19] The presence of "[t]his triad of injury in fact, causation and redressability" establishes American Victims' constitutional standing and that there is an Article III case or controversy before this Court.[20]

### B.    American Victims have Statutory Standing

As the D.C. Circuit has held, statutory standing "is not really about standing at all," but rather it "is nothing more than an inquiry into whether the statute at issue conferred a 'cause of action' encompassing 'a particular plaintiff's claim'" making statutory standing "a merits issue."[21]

When deciding whether American Victims have pled a valid claim for relief, the Court "must treat the complaint's factual allegations as true and may not use factual findings and legal conclusions drawn from outside the pleadings. The Federal Rules of Criminal Procedure have largely adopted this pleadings-only rule for third-party ancillary proceedings."[22]

There are two statutes at play: TRIA and 21 U.S.C. § 853. American Victims undisputedly fall within TRIA's zone-of-interest. TRIA's "notwithstanding clause" unambiguously preempts any other provision of law that precludes American Victims' attachment efforts.[23] Accordingly, if

---

[19] *Id.*

[20] *Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83, 103-4 (1998); *see also id.* at n. 5 ("the point has always been the same [with the standing inquiry]: whether a plaintiff 'personally would benefit in a tangible way from the court's intervention.' *Warth v. Seldin,* 422 U.S. 490, 508 (1975).").

[21] *Emor*, 785 F.3d at 676-77 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-128 (2014)).

[22] *Id.* at 677 (internal citations and quotations omitted).

[23] TRIA § 201(a); *see also Levin II,* 162 F.4th at 643 n.1 (internal citation and quotations omitted) (TRIA's notwithstanding clause "clearly requires courts to disregard other statutory provisions that conflict with the scope of the TRIA. So, if TRIA specifically allows attachments that the civil-forfeiture statute specifically prohibits, TRIA prevails."); *U.S. v. Frank,* 8 F.4th 320, 327 (4th Cir. 2021) (internal citations and quotations omitted) ("Congress's use of a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section."); *Hill v. Republic of Iraq,* 2003 WL 21057173, at *2 (D.C. Cir. Mar. 11, 2003) (internal citations omitted) ("the phrase 'notwithstanding any other provision of law,' or a variation thereof, means exactly that; it is unambiguous and effectively supersedes all previous laws."); *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) ("the Courts

there is no conflict, 21 U.S.C. §§ 853 (c) and (k) should *not* bar American Victims' writ of attachment and/or § 853(n)'s standing requirements should not preclude American Victims from asserting their legal interest, but as the government has made clear, there **is** a conflict.

The government fights the necessary conclusion that TRIA affords American Victims "justice and compensation"[24] in this case by arguing that: 1) American Victims have not established that the CJNG is an agency or instrumentality of the Juárez Cartel; 2) even if American Victims could establish an agency or instrumentality relationship between the cartels, the government's interest has "vested" prior to American Victims; 3) the Court's preliminary order of forfeiture extinguished the rights of the defendant in favor of the government; 4) the government has sovereign immunity; and 5) it has an alleged general license authorizing it to deal with the Blocked Assets.

Each argument fails.

### 1.    The government has stipulated that the CJNG is an agency or instrumentality of the Juárez Cartel.

The government argues that **_its_** stipulating "that CJNG supplied narcotics to the Juárez Cartel" is not "*per se* sufficient to make CJNG an agency or instrumentality of the Juárez Cartel."[25] This ignores the legal standard in this District[26] for determining TRIA "agency or instrumentality":

> Any SDNT or SDNTK[27] person, entity, drug cartel or organization, including all of its individual members, divisions and networks, that **_is or was ever_** involved in the

---

of Appeals generally have interpreted similar 'notwithstanding' language … to supersede all other laws, stating that 'a clearer statement is difficult to imagine'"); *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 391-392 (Kennedy, J., concurring in part and dissenting in part) (internal citations omitted) ("The effect of [TRIA § 201(a)] is to ensure that other laws do not bar victims' efforts to enforce judgments").

[24] Harkin Statement.

[25] ECF No. 64.

[26] *Stansell v. Revolutionary Armed Forces of Colombia*, 2019 WL 4040680, at *4 (D.D.C. Aug. 26, 2019).

[27] SDNT and SDNTK are program codes used by OFAC when sanctioning individuals and entities. *See* U.S. Dep't of the Treasury, Office of Foreign Assets Control, *Program Tag*

cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment, or transportation, distribution of [Juárez Cartel illicit narcotics], or that assisted the [Juárez Cartel's] financial or money laundering network, is an agency or instrumentality of the [Juárez Cartel] under the TRIA because it was either:

(1)    Materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of [the Juárez Cartel]; and/or

(2)    Owned, controlled, or directed by, or acting for or on behalf of [the Juárez Cartel]; and/or

(3)    Playing a significant role in international narcotics trafficking related to [illicit narcotics manufactured or supplied by the Juárez Cartel].[28]

"[T]he purpose of the TRIA is to deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism. Under this standard, [American Victims] must present evidence sufficient to establish a relationship between a terrorist party and the purported agency or instrumentality,'"[29] and ***nothing*** in the statute requires that the agency or instrumentality be involved in the massacre of American Victims.

The government has stipulated to a ***direct connection*** between the CJNG and Juárez Cartel—"they had a business relationship."[30] This business relationship is tantamount to "materially assisting in … or providing foods or services in support of, the international narcotics trafficking activities of the Juárez Cartel" and/or "[p]laying a significant role in international narcotics trafficking related to illicit narcotics manufactured or supplied by the Juárez Cartel." The CJNG is an agency or instrumentality of the Juárez Cartel, and the government's argument to the contrary is disingenuous.

---

*Definitions for OFAC Sanctions Lists*, available at https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/program-tag-definitions-for-ofac-sanctions-lists.
[28] *Stansell*, 2019 WL 4040680, at *3-4.
[29] *Id.* at *4.
[30] ECF No. 64.

## 2. Title has not vested in the government.

The government claims in its briefing that "[u]nder the relation-back doctrine, the United States' interest in the [Blocked] Assets vested at the time of the crime giving rise to forfeiture".[31] However, the government's own audit and policy discredit this argument: "The Department [of Justice], until judicially or administratively forfeited, does not legally own [seized] property."[32] Thus, to claim that its interest is "vested"[33]—"completed … not contingent; unconditional; absolute"[34]—is "wrong".[35] And it is wrong because the relation-back doctrine "is a doctrine of *retroactive* vesting of title that operates only upon the entry of the judicial order of forfeiture or condemnation …. The relation-back rule applies only in cases where the Government's title has been consummated by seizure, suit, and judgment, or decree of condemnation, whereupon the doctrine of relation *carries back* the title to the commission of the offense."[36]

Counsel for the government has confirmed that 21 U.S.C. § 853(c) is more appropriately understood as a doctrine of retroactive vesting upon this Court entering a *final order of forfeiture*:

> I want to be very clear about the court's oral pronouncement of forfeiture at sentencing and inclusion of forfeiture in the judgment does not finalize the forfeiture in the manner of a final order of forfeiture. It formalizes the forfeiture <u>as to the defendant's property interest only.</u> … It will not shift funds out of the SADF

---

[31] *Id.*

[32] U.S. Dep't of Justice, "Assets Forfeiture Fund and Seized Asset Deposit Fund Management's Discussion and Analysis (Unaudited)," Sept. 30, 2024, located at https://oig.justice.gov/sites/default/files/reports/25-044.pdf at p. 44; *see also* U.S. Dep't. of Just., *Asset Forfeiture Policy Manual 2025* at Chpt. 2, Section V, Subsection C, available at https://www.justice.gov/criminal/criminal-afmls/file/839521/dl.

[33] ECF No. 64.

[34] Black's Law Dictionary (12th Ed. 2024), Vested.

[35] *United States v. Parcel of Land, Bldgs., Appurtenances & Improvements, Known as 92 Buena Vista Ave., Rumson, N.J.*, 507 U.S. 111, 125 (1993) (J. Scalia, Concurring) (hereinafter cited as "*Buena Vista*") (internal citations and quotations omitted).

[36] *Id.*

[Seized Asset Forfeiture Fund], it will not vest title of the assets in the government. It's not a final order of forfeiture.

Accordingly, "unless and until"[37] this Court enters a final order of forfeiture, not only has the government's interest in the Blocked Assets not vested, but the Blocked Assets shall be subject to American Victims' TRIA attachment, "notwithstanding any other provision of law."[38]

Furthermore, "in a criminal forfeiture proceeding, the Government acquires only the *defendant's* interest in the property."[39] Therefore, the appropriate question is not whether the American Victims' interest is superior to the Government's but rather whether American Victims' legal interest is superior to defendant Gutierrez-Ochoa.

"[S]uperiority is a question of federal law … [and] the inquiry here is not a precise one, but instead involves equitable considerations and is necessarily fact-bound and value-laden."[40] Defendant Gutierrez-Ochoa was a U.S. person in possession or control of property held on behalf of, or for the benefit of the CJNG. As a result, this property is blocked by the Kingpin Act. Therefore, Defendant Gutierrez-Ochoa could not, and does not, have an interest in the Blocked Assets. American Victims, on the other hand, *do* have a Congressionally mandated interest in the Blocked Assets as they are empowered with "all the weapons available in civil litigation"[41] and as a result, possess all "the tools necessary to find terrorist assets and seize them".[42]

---

[37] *Levin II* at 641.

[38] TRIA § 201.

[39] *U.S. v. Bailey,* 926 F.Supp.2d 739, 765 (W.D.N.C. 2013) (internal citations and quotations omitted); *see also U.S. v. Daugerdas*, 892 F.3d 545, 549 (2d 2018) (emphasis added) ("**the government's interest in the contested property will be identical to that held by the defendant at the time of the offense**").

[40] *United States v. Oregon,* 671 F.3d 784, 492 (4th Cir. 2012).

[41] 137 Cong. Rec. S4511-04 (Statement of Sen. Grassley)

[42] *Id.*

When determining whether an admitted terrorist money launderer or American Victims of Cartel Terrorism have a superior interest in Blocked Assets, American Victims submit that the facts, law, and equities significantly place American Victims in a superior position.

### 3.    It is a violation of Due Process to hold any aspect of the POF against American Victims.

"It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."[43] American Victims "never had a chance to present their evidence and arguments on the claim" that the Blocked Assets were subject to TRIA attachment, notwithstanding any other provision of law.[44] "Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position."[45]

American Victims were "not a party or a privy" to the POF; as such, to treat this Court's judgment as binding on American Victims is a violation of due process.[46]

### 4.    Sovereign immunity is a red herring.

Sovereign immunity protects the United States from lawsuits seeking "**money damages**."[47] American Victims are not seeking money damages from the government; as the government *itself* has noted—this section 853(n) proceeding "is designed to quiet title,"[48] and American Victims' writ concerns assets held in the SADF.

---

[43] *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 327 n. 7 (1979).

[44] *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329 (1971).

[45] *Id.*

[46] *United States v. Reckmeyer,* 836 F.2d 200, 206 (4th Cir. 1987) ("Serious due process concerns would be raised, however, if third parties asserting an interest in forfeited assets were barred from challenging the validity of the forfeiture.").

[47] *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 US 42, 48 (2024) (emphasis added) ("*Kirtz*"); *Greenbaum,* 67 F.4th at 432.

[48] ECF No. 64 at p. 5.

Section 853(n) proceedings **cannot** "lead to any compensatory damage award."[49] And, "[f]unds held in the SADF are not government property"[50] because "[a]bsent an order of forfeiture … affirmatively vesting title to seized property in the United States, the government does not have title to the property."[51] Accordingly, this is **not an action for money damages against the government**.

The government further claims that TRIA "does not clearly abrogate sovereign immunity to permit attachment of seized assets in possession of the U.S. government."[52] The government's position is inconsistent with the Supreme Court's precedent and ***its own briefing in this District***.

> **a.    The Supreme Court and D.C. Circuit moot the government's possession argument.**

"To date, [the Supreme Court] has found a clear waiver of sovereign immunity 'in only two situations.'"[53] The first situation does not apply, the second does. "The second situation is when a statute creates a cause of action and explicitly authorizes suit against a government on that claim. Statutes like these may not discuss sovereign immunity in so many words. But dismissing a claim against the government in these circumstances would effectively 'negate' a claim Congress has clearly authorized."[54] Stated differently, these actions **"expressly authorize[] suits against sovereigns in service of enforcing statutory requirements**. And recognizing immunity would [] negate[] those authorizations."[55]

---

[49] *U.S. v. McHan,* 345 F.3d 262, 275 (4th Cir. 2003).

[50] U.S. Dep't of Just., Off. of the Insp. Gen., *Audit of the Assets Forfeiture Fund and Seized Asset Deposit Fund Ann. Financial Statements Fiscal Year 2023* (Jan. 2024) at 5.

[51] U.S. Dep't. of Just., *Asset Forfeiture Policy Manual 2025* at Chpt. 2, Section V, Subsection C, available at https://www.justice.gov/criminal/criminal-afmls/file/839521/dl.

[52] ECF No. 64 at p 22.

[53] *Kirtz,* 601 U.S. at 49 (quoting *Financial Oversight and Mgmt. Bd. for P.R. v. Centro Periodismo Investigativo, Inc.,* 598 U.S. 339, 347 (2023).

[54] *Kirtz,* 601 U.S. at 49-50 (internal citation and quotations omitted).

[55] *Financial Oversight and Mgmt. Bd. for P.R.,* 598 U.S. at 348 (emphasis added).

Section 201(a) and the ATA precisely create statutory enforcement rights against cartel assets "seized or frozen by the United States"[56] and mandate that any such asset "shall be subject to execution."[57] Refusing this unmistakably clear right nullifies Congress's directive—an outcome forbidden by the Supreme Court.

Further, *Greenbaum* is inapposite for two additional reasons. First, it turned on the court's interpretation of "other provision of law."[58] This analysis is contrary to the command of the Supreme Court that "Congress need not state its intent [to waive sovereign immunity] in any particular way. It need not use magic words."[59] Second, *Greenbaum* has been clarified in the D.C. Circuit's *Levin II* decision.

In *Levin II,* the government sought civil forfeiture of assets in a frozen bank account. In addition to finding that the civil forfeiture proceeding did ***not*** bar plaintiffs from seeking to attach and execute their judgment under TRIA, the court held that assets **in the custody of the government**, pursuant to 18 U.S.C. § 981(c), were attachable under TRIA.[60]

Assets in the custody of the United States government are deposited into the SADF[61]—the same fund holding the assets here. Accordingly, *Levin II* fatally undermines *Greenbaum*'s holding that sovereign immunity shields assets from TRIA simply because they are in the government's possession or custody.[62] This makes sense because:

> As the United States points out, it is a mistake to equate "assets seized by" (which refers to assets of which the United States has taken forcible possession) with

---

[56] 18 U.S.C. § 2333(e); *see also* 28 C.F.R. §§ 8.5(a) and (b) ("[a]ll property seized … DEA … shall be delivered … [and] deposited promptly in the [SADF] pending forfeiture").
[57] TRIA § 201(a).
[58] *Greenbaum*, 67 F.4th at 432.
[59] *Kirtz,* 601 U.S. at 48 (Internal citations and quotations omitted) (*Kirtz* was decided ***after*** *Greenbaum*).
[60] *Levin II* at 643 n. 1.
[61] *See* 28 C.F.R. § 8.5.
[62] *Levin II* at 643 n. 1.

"assets held by" (which refers to assets presently possessed by United States by a lawful title.[63]

The government lacks lawful title to the Blocked Assets, and because Congress expressly commanded that blocked cartel assets seized or frozen by the United States ***shall*** be subject to execution notwithstanding any other provision of law, sovereign immunity provides no refuge.[64]

> ### b. The government no longer challenges other American victims of terrorism's attachment of blocked assets in the government's possession, custody, or control.

In the underlying civil forfeiture and attachment proceedings in *Levin,* the government twice moved to quash American victims of Iranian terrorism's motions to attach certain blocked assets. The district court "twice granted the government's motions, and the D.C. Circuit has now twice reversed. Based on the D.C. Circuit's most recent ruling, the United States no longer seeks to quash the Writs."[65]

The government has also represented that "[w]hile the funds are held in a [Wells Fargo] bank account in South Dakota, they are in the 'government's possessions [sic], custody or control.'"[66]

Having conceded that TRIA blocked assets in the government's possession, custody or control in *Levin* does not trump pursuit of "justice and compensation" by American victims

---

[63] *Weinstein v. Islamic Republic of Iran,* 274 F.Supp.2d 53, 57 (D.D.C. 2003) (emphasis added).
[64] TRIA § 201(a); *Hausler v. JP Morgan Chase Bank, N.A.,* 740 F.Supp.2d 525, 534 (S.D.N.Y. 2010) ("TRIA's opening phrase weighs in favor of preemption").

The government on page 25, in footnote 10, of its motion cites to the Harkin Statement regarding TRIA blocked assets not including assets "to which the United States claims ownership." As identified in the government's audits, forfeiture policy manual, by *Levin II,* and the Supreme Court, "unless and until" this Court enters a final order of forfeiture, title does not pass to the government and therefore, it cannot, and does not, have an ownership interest in the Blocked Assets.
[65] *Estate of Jeremy Isadore Levin, et al. v. Wells Fargo Bank, N.A.,* Case No. 21-cv-0420 (JEB), (D.D.C. Dec. 10, 2025) (internal citations omitted).
[66] *Id.*

seeking to attach assets pursuant to TRIA,[67] its argument to the contrary in this case displays a

clear inconsistency in the government's position that the D.C. Circuit has already addressed in

*Levin II.*

### 5.    The government's alleged license does not subvert TRIA.

The government claims that it has a "broad license authorizing the government's forfeiture

proceeding."[68] The government's alleged license is precisely the type of "mischief" TRIA was

enacted to prevent.[69] The D.C. Circuit has recently addressed the government's argument that

OFAC licenses can be issued under statutes other than the Trading with the Enemy Act or IEEPA,

and the Court explained:

> The government contends that the license exception can therefore do meaningful
> work even if any TWEA or IEEPA license unfreezes and un-blocks the relevant
> asset. The government asks us to imagine an asset simultaneously blocked under
> IEEPA and the Kingpin Act[--such as the Blocked Assets in this case]. As the
> government explains, if the government licensed transactions under its Kingpin Act
> authority but not under its IEEPA authority, then TRIA's license exception would
> operate to un-block the asset for TRIA purposes. And so, the government

---

[67] Harkin Statement.

[68] ECF No. 64 at 26.

[69] *Levin II,* 156 F.4th at 639. The argument can also be made that the general license that the
government argues would apply here is most likely in violation of the Administrative Procedures
Act ("APA").   The general license upon which the government lies violates the notice-and-
comment requirements of the APA (*see* 5 U.S.C. § 553) that are "designed (1) to ensure that agency
regulations are tested via exposure to diverse public comment, (2) to ensure fairness to affected
parties, and (3) to give affected parties an opportunity to develop evidence in the record to support
their objections to the rule and thereby enhance the quality of judicial review." *Capital Area
Immigrants' Rights Coalition v. Trump*, 471 F.Supp.3d 25, 44 (D.D.C. 2020) (quoting *Int'l Union,
United Mine Workers v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005)). The
government side-stepped the notice-and-comment requirement by claiming that the general-
license provision "involve[s] a foreign affairs function." *See* 87 Fed. Reg. 78470-01 (Dec. 21,
2022).   The D.C. Circuit has limited this exception to the notice-and-comment rulemaking
requirement "only if the rule 'clearly and directly' involves a 'foreign affairs function of the United
States'"—a standard applied by the D.C. Circuit only where "the rule implements an international
agreement between the United States and another foreign state." *E.B. v. U.S. Dep't. of State,* 583
F.Supp.3d 58, 62-3, 66 (D.D.C. 2022) (citing *New Jersey v. EPA,* 628 F.2d 1038, 1045 (D.C. Cir.
1980)). Here, foreign diplomacy is in no way *clearly and directly* implicated as the transactions at
issue are **_wholly domestic. See_** 31 C.F.R. § 598.202(a),

concludes, the license exception does meaningful work even under its narrow reading of 'blocked' and 'frozen.'

This account has several difficulties. To begin with, TRIA's text suggests that Congress envisioned OFAC would license specific transactions rather than remove statutory blocks one-by-one. Its license exception covers "property" subject to a license "for final payment, transfer, or disposition" in connection with a transaction that requires a license. TRIA § 201(d)(2)(A). If a license merely removed one of multiple overlapping statutory blocks on an asset, it would not actually authorize a transaction finally transferring or disposing of that property. Moreover, the government offers no explanation for why Congress would focus on the unblocking of assets in piecemeal fashion.[70]

Accordingly, "[i]f the government were right [about its alleged license], then section 201 would not prevent the very mischief that Congress sought to address—that provision [licensing] would allow the Executive to thwart attachment of blocked assets simply by authorizing itself to initiate forfeiture proceedings."[71] As the D.C. Circuit found in *Levin II*, the government's argument that its general license under forfeiture law preempts TRIA's "notwithstanding any other provision of law" clause fails as a matter of law because "authorizing itself to initiate forfeiture proceedings" does not divest American Victims of their rights to attach and execute on those same Blocked Assets under TRIA.[72]

## II.    THE BLOCKED ASSETS IN THIS CASE ARE "BLOCKED BY OPERATION OF LAW."

The government claims that the "record does not include any information suggesting that the government seized any Forfeiture Asset under the authority of the Kingpin Act, TWEA, or IEEPA."[73] Yet in the next two sentences, it states:

For purposes of this motion to dismiss, the government does not dispute [American Victims'] assertion that the Pamplona Property or seized cash are blocked assets.

---

[70] *Levin II* at 640.
[71] *Id.* at 639.
[72] *E.B.,* 583 F.Supp.3d at 69.
[73] ECF No. 64 at 16.

Because CJNG is a designated entity and it may have had in interest in both assets, those assets may have become blocked by operation of law."[74]

The Executive Branch understands that for sanctions to be effective against Mexican drug cartels, "[b]locking immediately imposes ***an across-the-board*** prohibition against transfers or dealings of any king with regard to the property,"[75] and that blocking must occur instantaneously and without notice.[76]

Moreover, the Executive Branch enjoys "broad discretion in such areas as initiating or foregoing prosecutions, selecting or recommending specific charges, and terminating prosecutions by accepting guilty pleas."[77] Accordingly, its unilateral choice to "seize[] the Forfeited Assets under the criminal forfeiture statutes"[78] ***does not*** negate that the assets are also blocked by IEEPA or the Kingpin Act—it merely represents a choice, and only a choice by the Executive Branch, it is not a determination of law.

The government's position is further undercut by the D.C. Circuit's first *Levin* opinion where the government—seeking to prevent American victims of Iranian terrorist attacks from achieving "some measure of justice and compensation"—argued that certain funds were not "blocked assets." The D.C. Circuit held:

1) "The government's argument here and the district court's holding that Iran [] has no property interest in the blocked funds 'is inherently at odds with OFAC regulations that require the 'property and interests in property' of Specially Designated Global Terrorists to be blocked in the first place. *See* 31 C.F.R. §

---

[74] *Id.*

[75] U.S. Dep't. of the Treasury, Office of Foreign Assets Control, *Basic Information on OFAC and Sanction* at #9, available at https://ofac.treasury.gov/faqs/topic/1501 (emphasis added).

[76] Exec. Order No. 14059, 86 Fed. Reg. 71549 (Dec. 15, 2021).

[77] United States Department of Justice, Justice Manuel, Title 9, Section 27.110, comment, available at https://www.justice.gov/jm/jm-9-27000-principles-federal-prosecution (citing cases supporting this proposition).

[78] ECF No. 64 at p. 16.

594.201(a)[; *see also* 31 C.F.R. § 598.202(a) (Kingpin Act regulation contains near identical language)]"[79]; and

2) "The premise of the government's forfeiture action is that the funds are traceable to Iran. … The district court therefore erred in concluding that the plaintiffs had failed to show that the blocked funds were, under § 201(a) of the TRIA, 'the blocked assets of a terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party.)."[80]

"It is emphatically the province and duty of the judicial department to say what the law is. … [And w]hen the meaning of a statute [is] at issue, the judicial role [is] to interpret the act of Congress, in order to ascertain the rights of the parties."[81]

The Kingpin Act and its implementing regulations block all cartel "property and interests in property that are in the United States, that come within the United States, or that are or come within the possession or control of any U.S. person."[82] "[P]roperty and property interests include[s] but [are] not limited to money … and any other property, real, personal, or mixed, tangible or intangible, or ___**_interest or interests therein_**___, whether present, future, or contingent."[83]

The CJNG Cartel had or has a contingent possessory interest in assets (identified in the POF as assets a-d and g-l) seized by the United States, within the United States, from the possession or control of its associate in the United States—these assets are Kingpin Act "blocked assets" and, they shall be subject to TRIA execution, "notwithstanding any other provision of law."[84]

---

[79] *Estate of Levin v. Wells Fargo Bank, N.A.,* 45 F.4th 416, 423 (D.C. Cir. 2002).

[80] *Id.*

[81] *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 385 (2024) (internal citations and quotations omitted).

[82] 31 C.F.R. § 598.202(a).

[83] 31 C.F.R. § 598.312 (emphasis added).

[84] TRIA § 201(a).

The government claims that common sense and the plea agreement do not support the inference that the defendant's luxury items and cars seized by the United States, within the United States, from the possession or control of a U.S. person are TRIA blocked assets. First, as the government's motion makes clear these items were "purchased with CJNG's drug proceeds".[85]

Second, as the government has also made clear in its sentencing memorandum:

> Nemesio Oseguera Cervantes, also known as 'El Mencho' ('Mencho'), is the top leader of the CJNG and the father of Defendant's long-term girlfriend, Laisha Oseguera-Gonzalez. For at least a year, Defendant was not only a willing participant—but also a significant beneficiary—of CJNG's drug trafficking and money laundering operations. Together with Mencho's daughter, Defendant enjoyed a CJNG-sponsored life of abundance in an exclusive residential neighborhood in Riverside, California. … Defendant was not just a CJNG money launderer earning a commission. He was a significant and direct beneficiary of CJNG's violent narcotics operations: He enjoyed a luxurious lifestyle in the United States with Mencho's daughter, spending Mencho's drug proceeds, and living in a property the CJNG arranged to buy for them."[86]

The government's own arguments are, **_again_**, contradicted by the objective facts in this case—the defendant and the CJNG are one-in-the-same, and all their property and interests in property in the United States or within their control or possession is blocked.[87]

The defendant "did CJNG's bidding and enabled" the CJNG to "kill[], torture[], and corrupt[] … all for profiting and enrichment" of the cartel.[88] Accordingly, all assets identified in the POF are TRIA "blocked assets," and the government's representations to the contrary raise the question, why is government engaging in such blatant contradictory semantics to deny American Victims "justice and compensation"?[89]

---

[85] ECF No. 64 at p. 3.
[86] ECF No. 54 at pgs. 4, 8-9.
[87] 31 C.F.R. § 598.202(a).
[88] ECF No. 54 at p. 8.
[89] Harkin Statement.

III.    **GOVERNMENT'S IMPROPER REFERENCE TO OFAC REQUESTS THE COURT ABDICATE ITS ARTICLE III OBLIGATIONS.**

The government alludes that the appropriate measure for American Victims to seek redress is to subpoena information from OFAC, then subpoena information from financial institutions, and then seek to attach and execute against any identified assets, and rather than follow this process, American Victims seek a short cut.[90] American Victims have engaged in this process; however, moving for attachment in cases like this is not a mutually exclusive proposition, and American Victims' experience with this process would be eye-opening to the Court regarding the obfuscatory nature of that process.

Further, Congress empowered American Victims through TRIA to do precisely what they are doing here: seeking to enforce their terrorism judgment against blocked assets, notwithstanding any other provision of law. To pigeon-hole American Victims, who Congress has armed with "all the weapons available in civil litigation",[91] "without first determining the extent of their legal interest in the forfeited property would be an improper delegation of the Court's judicial authority to an executive agency, as well as an improper shirking of the obligation conferred on this Court by Congress" to adjudicate this Ancillary Proceeding.[92]

**CONCLUSION**

"Public bodies, like private persons, are occasionally under the dominion of strong passions and excitements; impatient, irritable, and impetuous. If a[n Executive] feels no check but its own will, it rarely has the firmness to insist upon holding a question long enough under its own view,

---

[90] ECF No. 64 at p 27.

[91] 137 Cong. Rec. S4511-04 (Statement of Sen. Grassley).

[92] *United States v. Bailey,* 926 F.Supp.2d 739, 773 (W.D.N.C. 2013).

to see and mark it in all its bearing and relations to society."[93] "The doctrine of the separation of powers was adopted by the Convention of 1787, not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was not to avoid friction, but, by means of the inevitable friction incident to the distribution of the governmental powers among three departments, to save the people from autocracy."[94]

Our government is "emphatically and truly, a government of the people. In form, and in substance, it emanates from them. Its powers are granted by them, and are to be exercised directly on them, and for their benefit."[95]

For decades, it has been unequivocally "clear that most Americans and their elected representatives understand the importance" of making "international terrorists and their sponsors pay an immediate price for their attacks on innocent Americans abroad."[96]  In the face of darkness, the light of American justice shines bright—and the darkness cannot, and will not, overcome it.

Accordingly, American Victims respectfully request that the Court hold that:

- "Congress explicitly promulgated a comprehensive scheme providing that any assets blocked under the [Kingpin Act] or similar OFAC regulations are to be subject to judgment execution for the benefit of victims of terrorist [attacks]—most fittingly, as in this case, when the crime victim[s are] American citizen[s]"

- Deny the government's Motion; and

---

[93] *INS v. Chadha*, 462 U.S. 919, 949 (1983) (quoting 1 J. Story, Commentaries on the Constitution of the United States 383-84 (1858)).

[94] *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 613-14 (1952) (Frankfurter, J., concurring) (quoting *Myers v. U.S.,* 272 U.S. 52, 85 (1926)).

[95] *M'Culloch v. State*, 17 U.S. 316, 405 (1819); *see also U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 821 (1995) (quoting A. Lincoln, Gettysburg Address (1863)) ("Ours is a 'government of the people, by the people, for the people.'").

[96] Harkin Statement.

- Allow American Victims the opportunity to seek justice for the heinous terrorist attacks they endured on November 4, 2019, notwithstanding any other provision of law.[97]

DATED: January 5, 2026                    Respectfully submitted,


                                          /s/ John M. Eubanks
                                          _____

                                          MOTLEY RICE LLC
                                          John M. Eubanks, Esq.
                                          (D.C. Bar #SC0013)
                                          Michael E. Elsner, Esq.
                                          (*pro hac vice* forthcoming)
                                          28 Bridgeside Blvd.
                                          Mount Pleasant, SC 29464
                                          Tel: (843) 216-9000
                                          MElsner@motleyrice.com
                                          JEubanks@motleyrice.com

---

[97] *Hausler,* 470 F. Supp. 2d at 539.